FARMERS BANK of Woodward, Appellant, v. DAVID G. SKILES et al., Appellees.

L. A. ANDREW, Superintendent of Banking, Appellant, v. D. G. SKILES et al., Appellees.

D. G. BURKETT, Appellant v. DAVID SKILES et al., Appellees.

No. 42835.

JUNE 21, 1935.

REHEARING DENIED OCTOBER 17, 1935.

Guy H. Hall., Charles I. Joy and Harry Wifvat, for appellants.

Stanley Trevarthen, for appellees.

ANDERSON, C. J.—The three actions indicated in the title were commenced by creditors of D. G. Skiles to set aside conveyances made to Maggie Skiles by D. G. Skiles, her husband. By stipulation the three suits were consolidated and tried at the same time and upon the same record, and the questions involved are presented here on one appeal.

The plaintiffs claim that certain conveyances of real estate made by the defendant D. G. Skiles to his wife, Maggie, on June 11, 1932, for the expressed consideration of "$1.00 and other valuable considerations," were voluntary, without consideration or a sufficient consideration, and were executed for the purpose and with the intent of hindering, delaying, and defrauding the plaintiffs as creditors of D. G. Skiles, and that his codefendant, Maggie Skiles, participated in the intent and fraud. There was a trial to the court resulting in a finding and ruling sustaining the conveyances and dismissing the plaintiffs' petition. The plaintiffs appeal.

The deeds in question were executed in June, 1932. The record discloses that about the time the deeds were executed computations were made by the husband and wife and it was found, determined, and agreed that the husband was at that time indebted to the wife in the amount of approximately $8,000. This was made up of about $2,200 in rent realized by the wife from some Dakota land which she owned and which was turned over to her husband, David, and used by him. It appears that there was an agreement or understanding between the husband and wife that the proceeds from raising chickens and turkeys and selling the same and also selling eggs should be the wife's separate property, and that during the years preceding the date of the conveyances the wife had realized approximately $2,500 from such sources, and that about $1,500 was realized from live stock owned by the wife, and that the proceeds of the sale of all these items were delivered to the husband by the wife with the agreement and understanding that the husband would repay such several amounts to his wife. The record shows that at various times the wife demanded such repayment, and that after he (her husband) had executed mortgages, in which she joined, of approximately $13,000 on 270 acres of land and some town property, that she demanded and her husband conveyed to her the

270 acres of land here in question. Several times prior to the execution and delivery of the conveyances the wife, Maggie, had asked her husband for payment or security for what he owed her, but these requests were ignored until about the time the conveyances were made. The 270 acres was incumbered by a mortgage at the time it was conveyed to the wife and there was possibly an equity remaining not exceeding $6,000. There can be no question, under the record, as to the existence of a valid indebtedness due the wife from the husband of several thousand dollars, although under the crude manner in which the accounts were kept it is difficult to ascertain the exact amount. However, we are satisfied, from a careful reading of the record, that there was a sufficient amount due from the husband to the wife to constitute an adequate consideration for the transfer of the equity in the property involved. We do not find any evidence of fraud or connivance upon the part of the husband and wife as would warrant a court in finding that the conveyances in question were executed with intent to hinder, delay, and defraud the creditors of D. G. Skiles. The testimony of the husband and wife as to the items of indebtedness and as to the fact that the wife had demanded security for the indebtedness several times in 1930, 1931, and 1932, preceding the execution of the conveyances, is corroborated by the testimony of their daughter, Isabel Scott, who was present and heard the conversation between her parents and knew of the accounting of the several amounts claimed by her mother as due from her father.

The burden was upon the plaintiffs to prove insolvency of D. G. Skiles and also to prove inadequacy of consideration or no consideration. There is very little, if any, evidence in the record as to the insolvency of D. G. Skiles. There is evidence that the conveyances in question were made for an adequate consideration. There is no evidence that the grantee in the conveyances, Maggie Skiles, knew of the financial situation of her husband, David Skiles, other than such indebtedness as was represented by the mortgages we have referred to, and neither active nor constructive fraud on her part is established by this record. In demanding the conveyances of the real estate in question, she was apparently concerned solely for her own protection for money honestly due her from her husband and there is no evidence or circumstances in the record from which it can be said that she participated in or practiced any fraud.

We have had many cases before us involving the questions here presented. In many of the cases the facts disclosed are very similar to the facts as shown by this record. In the early case of City Bank v. Wright, 68 Iowa 132, 26 N. W. 35, we held that even though the wife had knowledge of the husband's embarrassed financial condition, and although she was not present when conveyances to her were made, and even if business between herself and husband was not conducted with the strictness which is usual among business men, that conveyances to her for a valuable consideration should not be disturbed at the suit of creditors.

We followed the ruling in the Wright case, supra, in Roberts v. Brothers, 119 Iowa 309, 93 N. W. 289, in which we held that where real estate was conveyed to the wife by the husband in payment of a valid debt such conveyance would not be disturbed at the suit of creditors even though it amounted to a preference.

This rule has been followed in many cases since, including, Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Jordan v. Sharp, 204 Iowa 11, 214 N. W. 572; Aldrich v. Van Hemert, 205 Iowa 460, 218 N. W. 311; Clark v. Clark, 209 Iowa 1179, 229 N. W. 816.

First Nat. Bank v. Currier, 218 Iowa 1041, 256 N. W. 734, appears to be the last pronouncement of this court upon questions here involved. In that case we said that while the grantee was the wife of the grantor:

"That fact alone, however, is not a badge of fraud, although it may be a circumstance to be considered in determining whether or not the conveyance was valid. [Citing cases.] An insolvent debtor is not permitted to fraudulently dispose of his holdings in order to hinder or delay his creditors. So if, when a transfer of property is made, the insolvent grantor intended thereby to defraud his creditors, and the grantee benefiting by the transaction had knowledge of the unlawful intent, and participated or co-operated therein, then the conveyance is voidable, and may be successfully attacked by those interested. But if, on the other hand, the grantee in such transaction acts in good faith and gives an adequate consideration, the grantor's fraud in the premises will not be enough to invalidate the grant. * * * In a case where actual fraud is alleged as the basis for set-

ting aside a conveyance, and the deed purports a consideration, the burden of proving lack or insufficiency of consideration, or that the grantee has acted in bad faith, is upon the creditor, even when the grantor is insolvent. [Citing cases.] The deed, as before indicated, purports to be based upon a consideration. Therefore, the burden of proof is upon the appellant, and not the appellees, to show the inadequacy of the consideration as well as to show the bad faith of the grantee."

To the same effect is our holding in Pike v. Coon, 217 Iowa 1068, 252 N. W. 888, and many other cases which it is not necessary to extend this opinion to cite or refer to.

In Clark v. Clark, supra, we held that the fact that a part· of the indebtedness antedated the conveyance many years did not make the transfer fraudulent if there was in fact an actual bona fide indebtedness and it was understood between the husband and wife that the husband was expected to repay the wife.

In this case it might be said from the record that the husband intentionally preferred his wife, but it cannot be said that he practiced any fraud in so doing. In fact, when he made the loan on this land of $9,000, approximately $2,200 of the amount was used by him in reducing his indebtedness to the Farmer's Bank of Woodward, one of the appellants in this case. Without further extending this opinion, we are satisfied from a careful reading of the record that the plaintiffs failed to show themselves entitled to the relief demanded, and that the decision of the lower court was right. An affirmance necessarily follows.— Affirmed.

ALBERT, MITCHELL, HAMILTON, POWERS, KINTZINGER, PARSONS, RICHARDS, and DONEGAN, JJ., concur.